Bart K. Larsen, Esq.
Nevada Bar No. 8538
Eric D. Walther, Esq.
Nevada Bar No. 13611
**Kolesar & Leatham**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada  89145
Telephone:  (702) 362-7800
Facsimile:  (702) 362-9472
E-Mail:   blarsen@klnevada.com
              ewalther@klnevada.com

*Attorneys for Debtor Virtual Communications Corporation*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE: | Case No.  18-12951-leb |
| VIRTUAL COMMUNICATIONS CORPORATION, | Chapter 11 |
| Debtor. | Date:  August 14, 2018<br>Time: 9:30 a.m. |

**BRIEF IN SUPPORT OF CONFIRMATION OF FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF VIRTUAL COMMUNICATIONS CORPORATION AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT**

Debtor and plan proponent Virtual Communications Corporation, ("Debtor" or "VCC") by and through its counsel, Bart K. Larsen, Esq. of Kolesar & Leatham, hereby submits this brief in support of confirmation of the *First Amended Chapter 11 Plan of Reorganization for Virtual Communications Corporation* [ECF No. 38] and final approval of the *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Virtual Communications Corporation* [ECF No. 39].[1]

---

[1] Capitalized terms not otherwise defined in this Motion shall have the definitions as provided for in the Disclosure Statement and Plan of Reorganization.

## I. BACKGROUND

1. On May 22, 2018 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. Since the Petition Date, the Debtor has continued to operate its businesses and manage its property as a debtor and debtor in possession pursuant to §§ 1107(a) and 1108.

3. The initial § 341 meeting of creditors took place on June 28, 2018. A continued §341 meeting of creditors took place and was concluded on August 1, 2018 [ECF No. 68].

4. The Debtor is current in the filing of all monthly operating reports.

5. On June 13, 2018, the Debtor filed its *First Amended Chapter 11 Plan of Reorganization for Virtual Communications Corporation* [ECF No. 38] (the "Plan") and *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Virtual Communications Corporation* [ECF No. 39] (the "Disclosure Statement").

6. On June 25, 2018, the Bankruptcy Court entered its *Order (1) Conditionally Approving Adequacy of the Proposed Disclosure Statement to Accompany Plan of Reorganization; and (2) Setting a Hearing on Confirmation of the Debtor's Chapter 11 Plan of Reorganization and Related Deadlines* [ECF No. 42], which, among other things, scheduled a hearing to consider confirmation of the Plan to take place on August 14, 2018 and set a deadline of August 7, 2018 for creditors holding Claims in Impaired Classes to deliver ballots voting to accept or reject the Plan to the Debtor's counsel.

7. Debtor's counsel has received ballots from creditors holding Claims in Impaired Classes 1, 2, 3, 4, and 5 in sufficient numbers and amounts to determine that each Impaired Class has voted to accept the Plan.

8. A *Certification of Acceptance of Debtor's Plan of Reorganization* [ECF No. 73] (the "Ballot Summary") was filed on August 10, 2018.

## II. FINAL APPROVAL OF THE DISCLOSURE STATEMENT

**A. The Bankruptcy Court Should Approve the Disclosure Statement on a**

The standard for approval of a disclosure statement accompanying a chapter 11 plan of reorganization is embodied in 11 U.S.C. § 1125(a)(1), which reads:

§ 1125 Postpetition disclosure and solicitation

(a)    In this section -

"adequate information"' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

To assist in determining what constitutes adequate information, case law has given rise to certain criteria to aid the courts in evaluating the sufficiency or the adequacy of disclosure statements:

Relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *see In re Jeppson*, 66 B.R. 269, 292 (Bankr. Utah 1986). In addition, "[a]n informed judgment cannot be made without information about the plan and about how the provisions of the plan will be put into effect." *In re Michelson*, 141 B.R. 715, 718-719 (Bankr. E.D. Cal. 1992). Thus, every plan of reorganization must provide adequate means for the plan's implementation. *Id*. Pursuant to the above quoted provisions and case law, the Court has the authority to and should approve the disclosures contained in the Disclosure Statement as being adequate and fully satisfying the requirements of those provisions.

1  The Disclosure Statement contains the information required by Official Form 25B,
2 including: (a) a statement regarding the Debtor's background, ownership, and pre-bankruptcy
3 operating and financial history[2]; (b) a discussion of the reason for the bankruptcy filing[3]; (c) a
4 summary of proceedings to date in the bankruptcy case[4]; (d) a summary of assets[5]; (e) a description
5 of unclassified claims, including estimated amounts of administrative and priority claims[6]; (f) a
6 description of claims by class, including an estimate of the amount of claims in each class as
7 reflected by the schedules and proofs of claim on file[7]; (g) a summary of the treatment of
8 unclassified and classified claims under the proposed plan[8]; (h) a discussion of the means of
9 implementing the proposed plan[9]; (i) a summary of risk factors[10]; (j) a discussion of the tax
10 consequences of the proposed plan[11]; (k) a summary of the treatment of executory contracts under
11 the proposed plan[12]; (l) a liquidation analysis[13]; and (m) A statement as to how the proponent
12 intends to achieve the payments proposed[14].

13  On June 19, 2018, creditors Reva Waldo, Anthony White, Steven Hotchkiss, Troy
14 Suntheimer, Robin Suntheimer, Steve Ghesquire, and Jackie Stone (the "Liebrader Creditors")
15 filed their *Objection to Disclosure Statement* [ECF No. 41] in which they complain that the
16 Disclosure Statement should include a statement specifying that the confirmation of the Plan would
17 have no effect on their claims against the Debtor's former officer and director, Ronald Robinson,

---

[2] S*ee* Disclosure Statement § II. (A)-(D).

[3] S*ee id.* at § II. (B).

[4] *See id.* at § II. (E).

[5] S*ee id.* at § II. (A)-(D), Exhibit B, Exhibit E.

[6] S*ee id.* at § III. (B).

[7] S*ee id.* at § III. (C).

[8] S*ee id.* at § II. (C).

[9] S*ee id.* at § III. (D), Exhibit D.

[10] S*ee id.* at §§ I. (C), III. (E).

[11] *See id.* at § III. (G).

[12] S*ee id.* at § III. (F)(1).

[13] *See id.* at Exhibit E.

[14] S*ee id.* at § III. (D), Exhibit D.

based on Robinson's guaranty of certain obligations of the Debtor. The Leibrader Creditor's objection obviously lacks merit.

Nothing in either the Plan or the Disclosure Statement purports to release, discharge, or otherwise affect any claim any person may hold against Robinson. Furthermore, § IV. (D) of the Disclosure Statement specifically states that the limited releases contemplated under the Plan do not include the release of any "claims against any former officer or director of the Debtor" or "claims that may be asserted by third parties against persons or entities other than the Debtor." The Debtor does not and never has maintained that the confirmation of the Plan would result in the release or discharge of any claim against Robinson based on any personal guaranty of any obligation of the Debtor. As such, there is no need to address the matter in the Disclosure Statement. The Court should determine Disclosure Statement contains adequate information within the meaning of § 1125 and should be approved on a final basis.

### III. PLAN CONFIRMATION

**B. The Plan Should Be Confirmed Because It Complies with All Applicable Requirements of Bankruptcy Code Section 1129(a).**

Section 1129(a) provides that the Court shall confirm a chapter 11 plan where each of the statute's applicable sixteen subsections has been satisfied. 11 U.S.C. § 1129(a). As described below, the Plan satisfies every one of the applicable subsections of § 1129(a) and should therefore be confirmed.

**1. Bankruptcy Code Section 1129(a)(1) – The Plan Complies with Applicable Provisions of the Bankruptcy Code.**

Section 1129(a)(1) requires that a plan "compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of this subsection indicates that it embodies and incorporates the requirements of §§ 1122 and 1123, which govern the classification of claims and interests and the requisite mandatory contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977). As demonstrated below, the Plan complies with §§ 1122 and 1123, and with all other applicable provisions of the Bankruptcy Code, and thus satisfies the requirements of this subsection.

**a. The Plan Satisfies the Requirements of Bankruptcy Code**

**Section 1122.**

Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C. § 1122(a). By its plain language, § 1122 prohibits only the classification of dissimilar claims into the same class. *See* Alan J. Resnick, *et al.*, 7 COLLIER ON BANKRUPTCY at ¶ 1122.03[1] (16th ed. rev. 2011). As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. *See Steelcase Inc. v. Johnston* (*In re Johnston*), 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under § 1122(a)").

Here, § III of the Plan places creditor claims in four different classes. Each claim placed in a particular class is substantially similar to all other claims in that class. Thus, the Plan satisfies § 1122. Moreover, although not required by statute, each claim that is placed in a particular class is substantially *dissimilar* from those claims that have been placed in other classes. While Classes 1 and 2 both contain secured claims, the claims in each class are materially dissimilar. Class 1 consists of a claim secured by a prepetition retainer paid to an attorney that represented the Debtor in various state court proceedings prior to the Petition Date. Class 2 includes a claim that is secured by certain shares of common stock that the Debtor pledged as collateral to secure a payment due under a settlement agreement. Class 3 consists of approximately 100 claims based on certain unsecured promissory notes payable to Provident Trust Group, LLC as custodian for various individuals that elected to loan funds to the Debtor through self-directed individual retirement accounts. Class 4 includes all other general unsecured claims. No creditor or party in interest has objected to confirmation of the Plan on the basis that any claim in any of the above Classes has been improperly classified.

**b.    The Plan Satisfies the Mandatory Requirements of Bankruptcy Code Section 1123(a).**

Section 1123(a) sets forth eight mandatory requirements for the contents of a chapter 11 plan. 11 U.S.C. § 1123(a). Additionally, § 1123(b) sets forth various provisions that may, but need not, be included within a chapter 11 plan. 11 U.S.C. § 1123(b). As shown below, the Plan complies with all applicable requirements of these subsections.

### (1) Bankruptcy Code Section 1123(a)(1): The Plan Designates Classes of Claims.

Section 1123(a)(1) generally requires that chapter 11 plans designate classes of claims and interests. More particularly, § 1123(a)(1) requires that chapter 11 plans designate classes of claims, other than claims of a kind specified in §§ 507(a)(2) (administrative expense claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case), or 507(a)(8) (priority tax claims). *In re Art & Architecture Books of the 21st Century*, 2016 WL 1118743, 6 (Bankr. C.D. Cal. Mar. 18, 2016). Administrative claims and priority tax claims do not require class designation under § 1123(a)(1) "because their rights may not be impaired. The Bankruptcy Code specifies how they must be treated in a plan unless the holder of the claim affirmatively agrees to a less favorable treatment." *In re Western Asbestos Co.*, 313 B.R. 832, 841 n.11 (Bankr. N.D. Cal. 2003). Section III of the Plan satisfies this requirement by expressly classifying all claims other than administrative expense claims, "gap" claims, and priority tax claims.

### (2) Bankruptcy Code Section 1123(a)(2): The Plan Does Not Include Any Unimpaired Class of Claims.

Section 1123(a)(2) requires a plan to "specify any class of claims or interests that is not impaired under the plan." Section 1124(1) provides that "a class of claims or interests is impaired under a plan unless . . . the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." The Ninth Circuit has held that, when determining impairment under § 1124, "[t]he narrow question that thus arises is whether . . . 'legal, equitable, [or] contractual rights' were changed by the Plan [.]" *See Art & Architecture*, 2016 WL 1118743 at 9 (emphasis in original) (citing *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 943 (9th Cir.1993)). The Plan does not include any Class of claims or interests as unimpaired. Accordingly, § 1123(a)(2) is irrelevant.

### (3) Bankruptcy Code Section 1123(a)(3): The Plan Specifies the Treatment of Impaired Classes.

Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3); *see also Art & Architecture*, 2016 WL 1118743 at 9. The Plan satisfies this requirement by specifying that Classes 1, 2, 3, 4,

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

and 5 are impaired and by specifying the treatment of the claims in each of those Classes.

**(4)    Bankruptcy Code Section 1123(a)(4): The Plan Provides for the Same Treatment of Claims within Each Class.**

Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(3); *see also* Art & Architecture, 2016 WL 1118743 at 10.  The Plan satisfies this requirement by providing the same treatment to each claim that is classified in each particular class established under the Plan unless the holder of a claim agrees to a less favorable treatment of its claim.

**(5)    Bankruptcy Code Section 1123(a)(5): The Plan Provides Adequate Means of Implementation.**

Section 1123(a)(5) requires a plan of reorganization to "provide adequate means for the plan's implementation" and sets forth a non-inclusive list of ten examples for doing so.  11 U.S.C. § 1123(a)(5).  The Plan satisfies this requirement by setting forth the specific and straightforward means for the Plan's implementation.  Among other things, the Plan provides for the continued corporate existence of the Debtor, the retention of all property of the estate by the Debtor, the treatment of executory contracts and unexpired leases, making distributions in accordance with the terms and conditions of the Plan, and the release of claims.

**(6)    Bankruptcy Code Section 1123(a)(6): The Plan Provides Appropriate Charters for the Reorganized Debtor.**

Section 1123(a)(6) requires, with respect to a corporate debtor, that a chapter 11 plan provide for the inclusion in the charter of a reorganized debtor of a provision prohibiting the issuance of non-voting equity securities and, if necessary, providing protections for holders of preferred shares.  11 U.S.C. § 1123(a)(6).  Section VI.(A)(6) of the Plan satisfies this requirement by providing that the Debtor's organization documents shall be amended to include, among other things, a prohibition against the issuance of non-voting equity interests.

**(7)    Bankruptcy Code Section 1123(a)(7): The Plan Appropriately Provides for Officers and Directors.**

Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner

of selection of any officer, director, or trustee under the plan. ..." 11 U.S.C. § 1123(a)(7). The Plan contemplates that the Debtor will retain ownership and control of all assets of the estate with no material change in the current management or corporate structure of the Debtor. The Plan does not contain any substantive provisions governing the selection of any officer, director or trustee for the Debtor. Such matter will be governed by the Debtor's articles of incorporation and bylaws, which will be adopted without material change by the Reorganized Debtor after confirmation.

      **c.**      **The Plan Includes Appropriate Permissive Provisions under Bankruptcy Code Section 1123(b).**

Section 1123(b) provides that a chapter 11 plan may provide for the relief described in §§ 1123(b)(1)-(b)(5), and may include, pursuant to § 1123(b)(6) "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). In short, § 1123(b) is intended to be a broad grant of authority. As stated by the United States Supreme Court: "The Code … grants the bankruptcy courts residual authority to approve reorganization plans including any appropriate provision not inconsistent with the applicable provisions of this title." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990) (internal quotations omitted). The Plan contains a number of permissive provisions, all of which are intended to facilitate a prompt resolution of this case and are appropriate under the circumstances and under § 1123(b).

      **(1)**      **Impaired and Unimpaired Claims.**

Section III of the Plan provides that Classes 1, 2, 3, 4, and 5 are impaired.

      **(2)**      **Assumption and Rejection of Contracts.**

As permitted by § 1123(b)(2), § V of the Plan provides for the assumption or rejection of the Debtor's executory contracts and unexpired leases, if any.

      **(3)**      **Retention of Claims.**

Section X of the Plan provides for the retention of claims in accordance with § 1123(b)(3)(B).

      **(4)**      **Modification of Secured Claims.**

Under Section III of the Plan, the secured claim in Class 2 is modified as set forth therein.

      **2.**      **Bankruptcy Code Section 1129(a)(2): The Debtor Has Complied with All Applicable Provisions of the Bankruptcy Code.**

Section 1129(a)(2) requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history of § 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under §§ 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978)("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as § 1125 regarding disclosure"); *see also In re Sierra-Cal*, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995) ("The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of § 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan.").

The Disclosure Statement Order was entered on June 25, 2018. As set forth in the Disclosure Statement Order, the Court provisionally found that the Disclosure Statement contains "adequate information" within the meaning of § 1125. The Disclosure Statement Order further established procedures and deadlines for solicitation of votes to accept or reject the Plan. The Debtor served its solicitation package regarding the Plan on June 29, 2018.[15] As evidenced by the Debtor's recently filed *Certificate of Acceptance of Debtor's Plan of Reorganization* (the "<u>Ballot Summary</u>") [ECF No. 73], the Debtor complied with the procedures set forth in the Disclosure Statement Order. The Plan thus complies with the requirements of § 1129(a)(2).

**3.    Bankruptcy Code Section 1129(a)(3): The Debtor Has Proposed the Plan in Good Faith.**

Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The primary purpose of chapter 11 is to reorganize the debtor and to maximize the value of its estate. *See In re Bonner Mall Partnership*, 2 F.3d 899, 915 (9th Cir. 1993), cert. dismissed, 513 U.S. 18 (1994). Accordingly, a plan satisfies Bankruptcy Code § 1129(a)(3) when it "is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success." *Brite v. Sun Country Development, Inc. (In re Sun Country Development, Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985).

---

[15] *See* ECF No. 54.

1   "A plan is proposed in good faith where it achieves a result consistent with the objectives
2   and purposes of the Code," *In re Trans Max Tech., Inc.*, 349 B.R. 80, 88-89 (Bankr. D. Nev. 2002)
3   (citing *Platinum Capital v. Sylmar Plaza L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th
4   Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003)). The good faith determination is based on the
5   totality of the circumstances, *In re Trans Max*, 349 B.R. at 88-89 (Bankr. D. Nev. 2002) (citing *In
6   re Sylmar Plaza, L.P.*, 314 F.3d at 1074), and is made on a case by case basis. *See In re Marshall*,
7   298 B.R. 670, 675-76 (Bankr. C.D. Cal. 2003).

8   The Liebrader Creditors filed an *Objection to First Amended Plan of Reorganization* [ECF
9   No. 66] in which they complain that the Plan was not proposed in good faith because the Plan
10  allows the Debtor's former officer and director, Ronald Robinson, and a current officer and
11  director, S. Vernon Rodriguez, to retain their respective minority equity interests in the Debtor.
12  While the Liebrader Creditors are clearly unhappy with the prospect of Robinson and Rodriguez
13  retaining their equity interests, they have not explained how the proposed treatment of equity
14  interest under the Plan equates to a lack of good faith or is otherwise impermissible. Robinson is
15  approximately 86 years old. He was removed from his positions as an officer and director of the
16  Debtor prior to the Petition Date and has no role in the management or operation of the Debtor.
17  The Debtor agrees with the Liebrader Creditors that the Debtor holds viable claims against
18  Robinson based on his misuse of company funds. Those claims, as well as the reasons why the
19  Debtor has not pursued such claims, are discussed at length in the Disclosure Statement.[16] The
20  Debtor simply does not have the resources to undertake an expensive legal battle with Robinson
21  at this time. However, the Debtor's claims against Robinson are preserved under the Plan.[17]

22  The Plan represents the culmination of the Debtor's restructuring efforts and of this chapter
23  11 case. At all times, the Debtor's goal has been to maximize value for the benefit for all
24  stakeholders. The Plan accomplishes this goal by providing a recovery for unsecured creditors,
25  paying administrative and other priority claims in full, paying all secured claims, and allowing the
26  Debtor to continue its operations. Furthermore, each of the impaired Classes 1, 2, 3, 4, and 5 voted

---

[16] *See* Disclosure Statement at § II.(E)(5) and Exhibit E.

[17] *See* Plan at § X.(B).

to accept the Plan.

### 4. Bankruptcy Code Section 1129(a)(4): The Plan Provides for Requisite Court Approval of Payments for Services in Connection with this Case.

Bankruptcy Code § 1129(a)(4) requires that "[a]ny payment made or to be made by the [plan] proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," be approved by the Court as reasonable. 11 U.S.C. § 1129(a)(4); *see In re Resort Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (§ 1129(a)(4) satisfied where plan provides for payment of "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses are governed by various Bankruptcy Code provisions – *e.g.*, §§ 328, 329, 330, 331 and 503(b) – and need not be explicitly provided for in a chapter 11 plan.").

Section II of the Plan provides that fee claims of professionals employed by the estate must be filed no later than 60 days after the effective date of the Plan and will be paid after approval of by the Bankruptcy Court. Additionally, § II of the Plan provides that other administrative claims will be paid only after such claims are allowed by the Bankruptcy Court. The Plan therefore complies with § 1129(a)(4).

### 5. Bankruptcy Code Section 1129(a)(5): The Plan Discloses Directors and Officers.

Section 1129(a)(5) requires: (i) that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment or continuance in office of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed or retained by the reorganized debtor and the nature of the compensation to be provided to such insider. 11 U.S.C. §§ 1129(a)(5)(A) and (B).

As set forth in § III.(D)(2) of the Disclosure Statement, Michael Yoder and S. Vernon Rodriguez will continue to serve as the officers and directors of the Reorganized Debtor and will

continue to manage the day-to-day affairs of the Reorganized Debtor. The Plan therefore complies with § 1129(a)(5).

### 6. Bankruptcy Code Section 1129(a)(6): The Plan Does Not Effect Any Change in Publicly Regulated Rates.

Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan. 11 U.S.C. § 1129(a)(6). The Debtor is not subject to any such regulation and the Plan does not propose any rate changes. Bankruptcy Code § 1129(a)(6) therefore is not applicable.

### 7. Bankruptcy Code Section 1129(a)(7): The Plan Is in the "Best Interests" of Creditors.

Section 1129(a)(7) establishes what is commonly referred to as the "best interests test." Specifically, § 1129(a)(7)(A) requires that, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(7)(A). All impaired Classes have voted to accept the Plan. Accordingly, the Plan satisfies the best interests test under § 1129(a)(7)(A)(i). No further analysis is needed.

### 8. Bankruptcy Code Section 1129(a)(8): The Plan Has Been Accepted by All Impaired Classes Entitled to Vote.

Section 1129(a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8). "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). A class of claims that is not impaired is deemed to have accepted the plan. 11 U.S.C. §§ 1126(f) and 1129(a)(8). A class of claims that does not receive or retain any property under the plan is deemed to reject. 11 U.S.C. § 1126(g). Classes 1, 2, 3, 4, and 5 are impaired under the Plan. As set forth in the Ballot Summary, Classes 1, 2, 3, 4, and 5 each voted to accept the Plan. Therefore, the requirements of

§ 1129(a)(8) are satisfied.

### 9. Bankruptcy Code Section 1129(a)(9): The Plan Complies with the Required Treatment of Administrative Claims and Priority Claims.

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under § 507(a) receive specified cash payments under the plan unless the holder of such a claim agrees to a different treatment. 11 U.S.C. § 1129(a)(9). Pursuant to § II of the Plan, and in accordance with §§ 1129(a)(9)(A) and (B) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Administrative Claim will be paid in cash either on or as soon as reasonably practicable after the confirmation date, in the ordinary course of business, or as may be otherwise agreed. The Plan therefore satisfies the requirements of § 1129(a)(9).

### 10. Bankruptcy Code Section 1129(a)(10): At Least One Impaired Class of Claims Has Voted to Accept the Plan, Not Including Any Votes of Insiders.

Section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). As set forth in the Ballot Summary, Classes 1, 2, 3, 4 and 5 have each voted to accept the Plan. No Ballots were received from insiders. The Plan therefore satisfies § 1129(a)(10).

### 11. Bankruptcy Code Section 1129(a)(11): The Plan is Feasible.

Bankruptcy Code § 1129(a)(11) requires that the Court find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Bankruptcy Code § 1129(a)(11) does not require an absolute assurance of financial success by the debtor. Rather, the so-called feasibility standard requires only "a 'reasonable' prospect for financial stability and success." *In re Sound Radio, Inc.*, 103 B.R. 521, 524 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990); *accord Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Orlando Investors*, L.P., 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("The

purpose behind the statutory requirement of feasibility is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.") (internal quotations omitted).

Although no plan is without some risk[18], the Debtor has established sufficient evidence that the Plan is feasible, *i.e.*, that its confirmation is not likely to be followed by the need for further financial reorganization. No creditors or party in interest has objected to confirmation of the Plan on the basis that it is not feasible. In fact, there is little reason to doubt the feasibility of the Plan as it does not require any substantial payments to creditors. Instead, the vast majority of the Debtor's outstanding debts will be converted to equity interests in the Debtor under the Plan.

**12. Bankruptcy Code Section 1129(a)(12): The Plan Provides for Payment of all Statutory Fees.**

Bankruptcy Code § 1129(a)(12) requires that a chapter 11 plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of quarterly fees owing to the United States Trustee) be paid on or before the effective date of the plan. The Debtor is current in the payment of all quarterly fees owed to the United States Trustee. Moreover, § XIII. A of the Plan provides for the payment when due of all post confirmation fees payable pursuant to 28 U.S.C. § 1930.

**13. Bankruptcy Code Sections 1129(a)(13), (14), (15), and (16) are Not Applicable to the Debtor.**

Section 1129(a)(13) is not applicable to the Debtor because the Debtor has no retiree benefits within the meaning of § 1129(a)(13). *See* 11 U.S.C. § 1129(a)(13). Bankruptcy Code §§ 1129(a)(14) and (15) are only applicable to individual debtors. *See* 11 U.S.C. §§ 1129(a)(14) and (15). Finally, the Debtor is a commercial business entity, not a charitable organization. As such, § 1129(a)(16) does not apply. *See* 11 U.S.C. § 1129(a)(16).

**C. Bankruptcy Code Section 1129(b) Is Not Applicable.**

Section 1129(b) is not applicable to the Debtor's Plan, as all requirements of § 1129(a), including § 1129(a)(8), are satisfied. *See, e.g., In re Zenith Elecs. Corp.*, 241 B.R. 92, 106-07 (Bankr. D. Del. 1999), *aff'd*, 258 F.3d 180 (3d Cir. 2001); *In re New Midland Plaza Assocs.*, 247

---

[18] *See* § III. E of Disclosure Statement discussing potential risks.

1   B.R. 877, 895 (Bankr. S.D. Ga. 2000). As set forth above, in accordance with § 1129(a)(8)(A), all

2   impaired Classes – Classes 1, 2, 3, 4, and 5 – have voted to accept the Plan.

### IV. CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the Court enter an order confirming the Plan and approving the Disclosure Statement on a final basis.

DATED this 10th day of August, 2018.

**KOLESAR & LEATHAM**

By: /s/ *Bart K. Larsen, Esq.*
BART K. LARSEN, ESQ.
Nevada Bar No. 8538
ERIC D. WALTHER, ESQ.
Nevada Bar No. 13611
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145

*Attorneys for Debtor KITTUSAMY, LLP*